UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JANE DOE,                                           Case No.: 21-cv-4285

        Plaintiff

-against-

RAHUL SIDDHARTH,                                    **COMPLAINT**
SCG SIDDHARTH CREATIVE GROUP INC,
SGC CREATIVE GROUP, INC., and
VERIFICIENT TECHNOLOGIES INC,
                                                    Plaintiff Demands a
        Defendants.                              Trial by Jury

-----------------------------------------------------------X

        Plaintiff JANE DOE by her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants RAHUL SIDDHARTH, SCG SIDDHARTH CREATIVE GROUP INC, SGC CREATIVE GROUP, INC., and VERIFICIENT TECHNOLOGIES INC, upon information and belief as follows:

## JURISDICTION & VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under 28 U.S.C. § 1331.

2. 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3. Plaintiff has complied with all administrative prerequisites prior to commencing this action.

## PARTIES

4. At all times material, Plaintiff JANE DOE was and is an individual female.

5. At all times material, RAHUL SIDDHARTH was and is an individual male who is a citizen of the State of New York.

6. At all times material, SCG SIDDHARTH CREATIVE GROUP INC was and is a domestic business corporation, duly existing by the virtues and laws of the State of New York.

7. At all times material, SGC CREATIVE GROUP, INC. was and is a registered company in the State of New Jersey, not duly registered to conduct business in the State of New York but conducting business in the State of New York at 245 West 29th Street, Suite 300, New York, NY, 10001.

8. At all times material, VERIFICIENT TECHNOLOGIES INC. was and is a registered company in the State of New Jersey, not duly registered to conduct business in the State of New York but conducting business in the State of New York at 1250 Broadway, 36th Floor, New York, NY 10001.

9. At all times material, RAHUL SIDDHARTH was and is the owner and/or managing director of SCG SIDDHARTH CREATIVE GROUP INC, SGC CREATIVE GROUP, INC., and VERIFICIENT TECHNOLOGIES INC.

10. At all times material, RAHUL SIDDHARTH was and is the alter ego and/or proxy for SCG SIDDHARTH CREATIVE GROUP INC, SGC CREATIVE GROUP, INC., and VERIFICIENT TECHNOLOGIES INC.

## STATEMENT OF FACTS

11. In or around June of 2014, Defendants hired Plaintiff as a Consultant and, eventually, a Creative Director.

12. At all times material, Plaintiff was Defendants' employee within all federal, state, and local definitions.

13. In or around February of 2014, RAHUL SIDDHARTH and Plaintiff began a consensual sexual relationship.

14. RAHUL SIDDHARTH told Plaintiff, at that time, he was separated from his wife.

15. In or around June of 2014, RAHUL SIDDHARTH got Plaintiff pregnant.

16. On or about September 2, 2014, RAHUL SIDDHARTH implored Plaintiff to abort her pregnancy. At that time, RAHUL SIDDHARTH informed Plaintiff that he was married—not separated as previously stated—with two kids and did not want to "mess up" his life. RAHUL SIDDHARTH then offered Plaintiff $45,000 to abort the pregnancy. RAHUL SIDDHARTH offered $45,000 because he knew at that time Plaintiff's student loan debt was approximately $45,000.

17. In or around September of 2014, Plaintiff reluctantly aborted her pregnancy. Due to the procedure, Plaintiff bled for months, lost weight, and almost died. Due to the stress, clumps of Plaintiff's hair began to fall out.

18. RAHUL SIDDHARTH never paid Plaintiff $45,000.

19. In or around October of 2014, Plaintiff told RAHUL SIDDHARTH she no longer wanted to engage in a sexual relationship and was going to quit. RAHUL SIDDHARTH made an emotional plea for Plaintiff to stay.

20. That same evening, RAHUL SIDDHARTH approached Plaintiff with an employment agreement. RAHUL SIDDHARTH presented the proposed agreement to Plaintiff and demanded again that she stay working for Defendants. When Plaintiff refused, RAHUL SIDDHARTH became aggressive and **threatened to reveal the sexual affair and Plaintiff's abortion to her husband.** Plaintiff in fear of the harm, humiliation, and shame

such disclosures would cause her family, agreed to stay working for Defendants and finish up outstanding projects she was working on.

21. Later in 2014, RAHUL SIDDHARTH began to frequently discuss with Plaintiff the sexual acts they engaged in and send Plaintiff explicit text messages describing sexual acts he wanted to do to her.

22. Throughout 2015, RAHUL SIDDHARTH continued to engage Plaintiff in unwanted and unwelcomed sexual acts. At all times material, RAHUL SIDDHARTH blackmailed Plaintiff with the threat of public disclosure. To avoid public humiliation and harm to her family, Plaintiff would give in to RAHUL SIDDHARTH's sexual demands.

23. In or around 2015, RAHUL SIDDHARTH would communicate with Plaintiff on work related matters. The conversations would routinely then pivot toward RAHUL SIDDHARTH telling Plaintiff what he expected out of her sexually.

24. At all times material, if Plaintiff did not engage RAHUL SIDDHARTH's sexual fantasies or participate in sexual acts, RAHUL SIDDHARTH **would threaten to disclose their affair to her husband**.

25. In or around 2015, RAHUL SIDDHARTH began to withhold payments from Plaintiff. When Plaintiff approached him for payment for work done, RAHUL SIDDHARTH would demand sexual favors in return.

26. RAHUL SIDDHARTH did not withhold payments for similarly situated male colleagues.

27. RAHUL SIDDHARTH routinely did not compensate Plaintiff for her work.

28. RAHUL SIDDHARTH would routinely demand sex in exchange for work-related payments.

29. On one such occasion, Plaintiff asked RAHUL SIDDHARTH to pay her for her work. RAHUL SIDDHARTH instead demanded that Plaintiff meet him, have sex with him, and then he would pay her.

30. RAHUL SIDDHARTH routinely engaged in *qui pro quo* sexual harassment and force himself on Plaintiff before he paid Plaintiff.

31. To date, Defendants owe Plaintiff earned wages. Routinely, these wages were either (i) not paid to Plaintiff or (ii) paid to Plaintiff after she engaged in unwanted and unwelcomed sexual acts with RAHUL SIDDHARTH.

32. In or around 2015, RAHUL SIDDHARTH began to make frequent references to the "file" he had on Plaintiff.

33. Additionally, around that time, RAHUL SIDDHARTH declared to Plaintiff he had "files" on multiple individuals.

34. In or around 2015, Plaintiff attempted to quit multiple times in an attempt to end the on-going, unwanted sexual relationship. Each time, RAHUL SIDDHARTH threaten to disclose their affair to her husband and use his "file" against her.

35. In or around December of 2015, Plaintiff approached RAHUL SIDDHARTH and, again, told him she needed to quit and no longer wanted to engage in any sexual activity with him. In response, RAHUL SIDDHARTH again presented Plaintiff with a new employment agreement (this time a "partnership" agreement between Plaintiff and Defendants). Plaintiff refused, as she made it unequivocally clear she no longer wanted to work for Defendants and no longer wanted a sexual relationship with RAHUL SIDDHARTH. Again, RAHUL SIDDHARTH threated Plaintiff by telling her, among other things, he would disclose their affair to her husband.

36. Plaintiff was trapped, helpless, and ashamed. As a result of RAHUL SIDDHARTH's threats, Plaintiff continued to work for Defendants. As a result of RAHUL SIDDHARTH's threats, Plaintiff engaged in unwanted and unwelcomed sexual interactions.

37. In or around February of 2016, RAHUL SIDDHARTH surreptitiously filmed himself and Plaintiff engaging in sexual activity. Around that same time, RAHUL SIDDHARTH showed Plaintiff what he had secretly filmed. Plaintiff was shocked and horrified. Plaintiff begged RAHUL SIDDHARTH to destroy any videos he had of her. RAHUL SIDDHARTH refused. Instead, RAHUL SIDDHARTH again indicated to Plaintiff that he had a file on her, that the video would be added to the file, and that he could share the file with her family at any time.

38. In or around 2016, RAHUL SIDDHARTH became increasing aggressive toward Plaintiff. For example, RAHUL SIDDHARTH began to frequently tell Plaintiff he had a "file" on her and could tell Plaintiff's family about their affair at any time. In sum, RAHUL SIDDHARTH threatened to ruin Plaintiff's life if she did not engage in sexual acts with him.

39. In or around June of 2016, RAHUL SIDDHARTH, with closed fists and with open hands, hit Plaintiff on Plaintiff's legs, back, and buttock. RAHUL SIDDHARTH hit Plaintiff because he was angry with how a work-related project was going. RAHUL SIDDHARTH's physical assault left Plaintiff bruised.

40. At that point, Plaintiff was petrified that if she were to leave her employer or refuse to engage in sexual acts with RAHUL SIDDHARTH her family life would be ruined and RAHUL SIDDHARTH would physically hurt her again.

41. Throughout the remainder of her employment RAHUL SIDDHARTH would make sexual demands of Plaintiff. Throughout the remainder of her employment RAHUL SIDDHARTH would occasionally leave Plaintiff alone for around a month or so, then begin to demand

sexual favors again. Throughout the remainder of her employment, RAHUL SIDDHARTH would continue to threaten to disclose his "file" to Plaintiff's family.

42. In or around the fall of 2017, Defendants constructively terminated Plaintiff.

43. In total, from November of 2014 to July of 2017, RAHUL SIDDHARTH coerced Plaintiff into engaging in non-consensual sexual acts at least twenty (20) times.

44. After being constructively terminated, RAHUL SIDDHARTH would contact Plaintiff via text and WhatsApp, and attempt to call Plaintiff constantly.

45. At all times material, after breaking free from Defendants, Plaintiff refused to meet with or have any kind of sexual relationship with RAHUL SIDDHARTH.

46. Plaintiff, while declining all of RAHUL SIDDHARTH's advances, remained polite as she was still petrified of the "file" RAHUL SIDDHARTH had on her.

47. In or around 2019, Plaintiff —who still could not find work after being constructively terminated—reached out to RAHUL SIDDHARTH for a letter of recommendation.  In response, RAHUL SIDDHARTH approached Plaintiff with a formal offer to again work for Defendants. RAHUL SIDDHARTH made it clear, when offering employment to Plaintiff, that he would expect sex in return for employment. Plaintiff again denied the offer.

48. On or about November 20, 2020, RAHUL SIDDHARTH begged Plaintiff to send him a photograph of herself. Plaintiff refused.

49. On or about November 20, 2020, RAHUL SIDDHARTH begged Plaintiff to meet him in person. Plaintiff refused and made it clear, once again, that it was unlikely to ever happen.

50. Thereafter, in or around late November of 2020, RAHUL SIDDHARTH purposefully, knowingly, and maliciously **sent his "file" to Plaintiff's husband**, as he had routinely promised to do if Plaintiff refused to engage in sexual acts with him.

51. On or about November 26, 2020, Plaintiff's husband received the package RAHUL SIDDHARTH sent. Within the package, were Plaintiff's underwear, a condom, photos of Plaintiff and RAHUL SIDDHARTH, and **documentation Plaintiff received from Planned Parenthood after she received an abortion**.

52. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety and severe emotional distress.

53. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

54. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants jointly and severally.

55. The above are just some of the examples of the unlawful employment practices that Defendants subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

57. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

58. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION AND RETALIATION UNDER THE EPA

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. Plaintiff claims Defendants violated the EPA, 29 U.S.C. §206(d)(1), which provides as follows:

    (1) Prohibition of sex discrimination. No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

    (2) No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection.

    (3) For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter.

61. Plaintiff, as a female, was discriminated against by Defendants because of her sex/gender and has suffered damages as set forth herein. Plaintiff also claims unlawful retaliation under the EPA for her opposition to Defendants' unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## TRAFFICKING VICTIMS PROTECTION ACT (TVPA)

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

63. Plaintiff brings this claim pursuant to all applicable sections of 18 U.S.C.A. §§ 1591, 1595 in that "An individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States. The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred." 18 U.S.C.A. §1595(a).

64. Defendants knowingly recruited, enticed, harbored, and obtained Plaintiff DOE through means of force, threats of force, and by a combination of such forceful means, and forcibly caused DOE to engage in an unwanted sexual act.

65. Defendants sought out and exploited Plaintiff for a commercial or monetary benefit or in connection to a commercial or monetary benefit.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION IN WAGES & RETALIATION UNDER NEW YORK LABOR LAW § 194

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth more fully herein.

67. New York Labor Law § 194 provides that:

> "No employee shall be paid a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, except where payment is made pursuant to a differential based on:
> a. a seniority system;
> b. a merit system;

      c. a system which measures earnings by quantity or quality of production; or

      d. a bona fide factor other than sex, such as education, training, or experience. Such factor: (i) shall not be based upon or derived from a sex-based differential in compensation and (ii) shall be job-related with respect to the position in question and shall be consistent with business necessity. Such exception under this paragraph shall not apply when the employee demonstrates (A) that an employer uses a particular employment practice that causes a disparate impact on the basis of sex, (B) that an alternative employment practice exists that would serve the same business purpose and not produce such differential, and (C) that the employer has refused to adopt such alternative practice."

68. Defendants required Plaintiff to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff less than such male employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a bona fide factor other than gender, such as education, training, or experience.

69. Defendants engaged in patterns, practices and/or policies of employment which willfully, and in the alternative unwillfully, discriminated against Plaintiff on the basis of sex/gender by paying Plaintiff a lesser rate of pay than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

70. Additionally, New York Labor Law § 194 provides that "No employer shall prohibit an employee from inquiring about, discussing, or disclosing the wages of such employee or another employee."

71. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff.

72. Defendants violated the above and Plaintiff suffered numerous damages as a result.

73. As a direct and proximate result of Defendants' unlawful, discriminatory, and retaliatory conduct in violation of the New York Labor Law, Plaintiff suffered, and continues to suffer, harm for which Plaintiff is entitled to an award of monetary damages and other relief.

### AS A FIFTH CAUSE OF ACTION UNDER STATE LAW DISCRIMINATION

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

75. New York State Executive Law § 296 provides that: "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

76. Defendants violated the section cited herein by terminating, creating and maintaining discriminatory working conditions, engaging in *quid pro quo* sexual harassment, and otherwise discriminating against the Plaintiff because of Plaintiff's sex.

### AS A SIXTH CAUSE OF ACTION UNDER STATE LAW AIDING & ABETTING

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

79. Defendants participated in, aided, abetted, and encouraged Defendants' employee to unlawfully harass and retaliate against Plaintiff.

80. Defendants violated the section cited herein as set forth.

## AS A SEVENTH CAUSE OF ACTION UNDER STATE LAW RETALIATION

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

82. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

83. As a direct consequence of Plaintiff refusing to engage in sexual acts and opposing unlawful activity by the Defendants, Defendants unlawfully retaliated against Plaintiff.

84. Defendants violated the section cited herein as set forth.

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

86. The Administrative Code of the City of New York § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87. Defendants engaged in an unlawful discriminatory practice and violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her gender, together with harassment and hostile work environment based on the same.

88. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New York City Administrative Code Title 8.

89. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A NINTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

91. The New York City Administrative Code Title 8, § 8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

92. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1)(e) by discriminating and retaliating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of her employer.

93. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN TENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

95. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

96. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

97. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN ELEVENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

99. New York City Administrative Code Title 8-107(19) provides that: "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment

of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

100. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A TWELFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

102. New York City Administrative Code Title 8-107(13)(b) provides that: "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where; (i) the employee or agent exercised managerial or supervisory responsibility; (ii) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

103. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS
### (AS AGAINST DEFENDANT RAHUL SIDDHARTH)

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

105. Defendant RAHUL SIDDHARTH purposefully and intentionally engaged in extreme and outrageous conduct, as described herein.

106. RAHUL SIDDHARTH's conduct has caused and continues to cause Plaintiff severe emotional anguish, pain and suffering, and other non-pecuniary damage.

### AS A FOURTEENTH CAUSE OF ACTION
### CIVIL RAPE
### (AS AGAINST DEFENDANT RAHUL SIDDHART)

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

108. Defendant RAHUL SIDDHARTH subjected Plaintiff to unwanted vaginal intercourse through forceful means.

109. The conduct of Defendant RAHUL SIDDHARTH constitutes civil rape against the victim Plaintiff DOE. NY CPLR § 213-C (2012) as amended by Amendment § 30.10.

### AS A FIFTEENTH CAUSE OF ACTION
### GENDER MOTIOVATED VIOLENCE PROTECTION ACT
### (AS AGAINST DEFENDANT RAHUL SIDDHART)

110. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

111. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a

crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

112. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

113. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

114. Defendant SIDDHARTH's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act.

115. As a result of Defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date:   New York, New York
        May 12, 2020

                                            Respectfully Submitted,

                                            **DEREK SMITH LAW GROUP**

                                            ***/s/ Alexander G. Cabeceiras***
                                            Alexander G. Cabeceiras, Esq.
                                            One Penn Plaza, Suite 4905
                                            New York, New York 10119